FARMERS LOAN & TRUST COMPANY, APPELLANT, V. JAMES S. SUYDAM ET AL., APPELLEES.

FILED JUNE 18, 1903.  No. 11,696.

Contract: MISTAKE: REFORMATION. Where parties have made a contract under a mutual mistake as to the existence of a fact which is a material inducement to it, such mistake may give a right to rescission, but is no ground for reforming the contract, and making it as the parties might presumably have done had they been aware of the truth.

APPEAL from the district court for Douglas county: JACOB FAWCETT, DISTRICT JUDGE. *Affirmed.*

*William A. Saunders,* for appellant.

*A. B. Coffroth, Henry W. Coffroth, Henry W. Pennock,* and *Flower, Peters & Bowersock, contra.*

HASTINGS, C.

The essential question in this case is as to the right to reform a quitclaim deed made in March, 1895, by the appellant trust company to James S. Suydam. This quitclaim deed purported to convey all the interest in and claims upon certain property in Omaha, "acquired under and by virtue of any and all tax sales and tax deeds." Plaintiff says that at the date of the deed it held a certificate of purchase of the property in question for the tax of 1893; that the fact of such ownership was not known to its attorneys and agents, through whom the quitclaim was made; and it asks to be allowed to reform the deed to except this sale certificate from its terms, and to foreclose the lien for taxes represented by it.

Defendant Close answered, denying the allegations as to a purchase for taxes of 1893; admitting his own title through Suydam, and that negotiations were had for a settlement of tax liens; and says that the quitclaim deed was given, accepted and paid for under the express agreement, as well as supposition, that it was a complete settlement of all tax liens held by plaintiff, and would have been accepted on no other consideration; that Suydam paid $795 for the deed with that understanding. He offered to reconvey and place the plaintiff in the same position as before the execution of the deed, if the $795 were repaid, or if credit to that amount as of the date of the deed were given upon the various tax liens held by plaintiff at the date of the deed. Close also alleged that the tax levy of 1893 was void, by reason of irregularities in the levy, through failure of the city board of equalization to hold its sessions, and failure of the county board to make a levy at the time provided by law. He also alleged that plaintiff was concluded by a decree of the United States circuit court foreclosing its tax liens, which plaintiff is alleged to have released. No claim of any rights, as innocent purchaser from the grantee in the quitclaim deed, was made by Close.

Plaintiff in reply denied all Close's allegations, said he got but $725 instead of $795 for the quitclaim deed, and alleged that Suydam and Close both knew what taxes were claimed by plaintiff at the time and were the basis of the quitclaim deed, and that the certificate of sale of 1894 was not included.

The court made a general finding for defendants and dismissed the action.   Plaintiff appeals.

The other defenses are apparently not insisted upon, but it is insisted that there is nothing in the record which warrants any reformation of this deed, and that the utmost which the facts shown would warrant is the rescission of the agreement for settlement and the restoration of the parties to their former position.   A somewhat careful reading of the evidence leads the writer to the latter conclusion.

The evidence tendered by plaintiff to establish its right to reformation of the contract consists of the depositions of its attorney, Mr. M. J. Sweeley, its president, James F. Toy, its secretary, G. N. Sweetser, and the letters by which the negotiations were wholly conducted.   They show clearly that the negotiations related solely to a tax sale in 1890 for taxes of 1889, and to subsequent taxes for 1890, 1891 and 1892 paid by plaintiff as tax purchaser.   It appears clearly that the certificate of sale of November, 1894, was in plaintiff's possession before the making of the deed of March 25, 1895, to Suydam, but was not known to plaintiff's attorneys and agents who negotiated the settlement, or to the officers who executed the deed.

The correspondence shows that the plaintiff was claiming in December, 1894, $778.90 as due under the sale of 1890 and on subsequent taxes paid under it.   The taxes for 1894 are referred to as unpaid by the plaintiff, but it clearly appears that the entire claim of plaintiff was negotiated for.   Defendants claimed that it would amount to no more than $694 in any event.   In a foreclosure suit brought in the United States circuit court upon a mortgage covering the property, a decree was entered in 1894,

in plaintiff's favor, for $782 taxes, which did not include the sale of 1894. It was found that the owner of the fee had not been made a party to that foreclosure, and negotiations for settlement went on.

Suydam's attorney called attention to the fact that there had been a resale of the property. None of the parties to the negotiations, however, were aware of plaintiff's connection with the sale. Plaintiff's officers finally agreed with Close's and Suydam's attorneys to accept $725. This was paid, and the quitclaim deed in the terms stated, the tax deed issued on the sale of 1890, and tax receipts for the years 1890 to 1892, inclusive, were turned over. M. B. Proctor, of Kansas City, who was agent for Suydam, says he paid $795 to a land agent at Omaha for the settlement of plaintiff's claim. The quitclaim deed recites a consideration of $1. Proctor also paid some tax claims held by a Mr. Baer, and acted, as he swears, and there is nothing to contradict him, on the supposition that all tax claims were settled, except for the taxes for 1894, which Suydam afterwards paid.

It is clear that these negotiations which resulted in the deed, which it is sought to reform, related only to the first tax sale and to payments made under it. Suydam, on the other hand, was negotiating to clear this land of tax liens, and seems to have abandoned defenses, more or less tenable, against these taxes. It is clear that the deed was made by officers, in ignorance of the further claim for the tax of 1893, by reason of the 1894 purchase, and was accepted under the like supposition that it cleared off all liens held by plaintiff, as it purported to do. That is, the deed was made by the parties precisely as they intended it, but, under a mutual mistake of facts, there was a further lien for 1893 taxes, of which neither of them knew.

It would not be equitable to enforce a reformation of this deed, which would leave the grantor in possession of a tax-sale certificate enforcible against this land, but will leave the grantee to pay the full consideration for less

than the clear title he thought he was getting. The grantee tenders in his pleadings a reconveyance. It would seem that the plaintiff is entitled to no more than that. If it had accepted this reconveyance, it would have been at liberty to proceed with the enforcement of both its liens for the amount legally collectible upon them.

The difficulty in decreeing a reformation in this case consists in the fact that the minds of the parties do not seem to have ever met upon the contract, in the form in which it is sought to be put. 3 Pomeroy, Equity Jurisprudence (2d ed.), section 1376. It is clear from the negotiations of these parties that each at the time fully intended a final and complete settlement of the tax claims. The fact that certain items were omitted would, doubtless, entitle either party to rescind, but would not entitle either party to claim a partial settlement, which neither of them ever agreed to. The demand of the defendant that plaintiff be required either to rescind the contract *in toto*, and place the property again in the position in which it was at the time of the giving of the quitclaim deed, or else abide by the terms of that deed, seems to be much more equitable than the demand of the plaintiff that this settlement, which was supposed to have been in full of all claims, should be held valid as to claims which were under discussion between the parties, but should be held to leave the plaintiff at liberty to assert, now, its further claim for the amount of its second certificate of purchase, which it then held but made no claim upon, and which is expressly surrendered in the deed. Plaintiff having elected in the lower court to accept a decree of dismissal rather than rescind, it can not now complain of anything inequitable in the decree. It is recommended that the judgment of the district court be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.