H.L. JELSMA AND TOMMY JELSMA, DOING BUSINESS AS SPA, INC., APPELLEES, V. ACCEPTANCE INSURANCE COMPANY, APPELLANT.
446 N.W.2d 725

Filed October 13, 1989.   No. 88-050.

Donn E. Davis, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Hal Bauer, of Bauer, Galter & O'Brien, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiffs, H.L. Jelsma and Tommy Jelsma, doing business as Spa, Inc., commenced this action for a declaratory judgment to determine whether a policy of fire insurance issued by the defendant, Acceptance Insurance Company, to the plaintiffs was in effect on July 29, 1986, the date that the plaintiffs' property was destroyed by fire, or whether the policy had been canceled prior to the loss.

The trial court found that it was the intent of the parties that the policy be issued for the period of time from September 10, 1985, through September 10, 1986; that the notice of cancellation sent to the plaintiffs was ineffective; and that the policy was in effect on July 29, 1986. The defendant has appealed, alleging as error these three findings of the district court.

The record shows that the plaintiffs were represented in the transaction by Alexander & Alexander, Inc., and the defendant by River City Underwriters, Inc. Prior to September 10, 1985, the plaintiffs contacted Alexander & Alexander, seeking renewal of fire insurance coverage for their property known as the Royal Grove. Alexander & Alexander then requested coverage through River City Underwriters, a managing general agent for Acceptance. River City Underwriters arranged for coverage by six insurers, one of which was Acceptance. The term of each policy issued was for a year, from September 10, 1985, through September 10, 1986, except the Acceptance policy, which had a term from September 10, 1985, through May 4, 1986.

Since the policy issued by the defendant was effective only from September 10, 1985, through May 4, 1986, the policy would not be in effect on July 29, 1986, unless it was subject to being reformed. Thus, in effect, this action was a suit in equity by the plaintiffs to reform the insurance policy which the defendant had issued. See *First Fed. Sav. & Loan Assn. v. Thomas*, 230 Neb. 465, 432 N.W.2d 222 (1988).

This court reviews actions in equity de novo on the record and is required to reach a conclusion independent of the trial court's findings; however, subject to the rule that where credible evidence is conflicting on material issues of fact, this court may consider the fact that the trial court observed the witnesses and accepted one version of facts over the other. *Id.*

The right to reformation depends on whether the instrument to be reformed reflects the intent of the parties. Reformation may be granted to correct an erroneous instrument to express the true intent of the parties to the instrument. In *Newton v. Brown*, 222 Neb. 605, 612, 386 N.W.2d 424, 429 (1986), we stated:

Reformation is based on the premise that the parties had reached an agreement concerning an instrument, but while reducing their agreement to a written form, and as the result of mutual mistake or fraud, some provision or language was omitted from, inserted, or incorrectly stated in the instrument intended to be an expression of the actual agreement of the parties.

Reformation may be ordered where there has been a mutual mistake or where there has been a unilateral mistake caused by the fraud or inequitable conduct of the other party. *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985). To overcome the presumption that the written instrument correctly expresses the intention of the parties and obtain reformation, the evidence must be clear, convincing, and satisfactory. *Id.*

Reformation of an insurance contract may be granted when through a mistake by the insurer's agent the policy fails to express the contract as intended by the parties.

Where the mistake of the insurer's agent is relied upon, the same principles governing reformation for mistake generally are applied. Consequently where a mistake of an agent is relied on, it must be mutual to warrant reformation, or there must be mistake of one party and fraud of the other, for, in the absence of fraud, a unilateral mistake, while it may afford ground for rescinding, does not justify the reforming of the contract.

17 G. Couch, Cyclopedia of Insurance Law § 66:43 (rev. 2d ed. 1983).

For purposes of reformation, mutual mistake is defined as
a belief shared by the parties, which is not in accord with the facts. . . . A mutual mistake is one common to both parties in reference to the instrument to be reformed, each party laboring under the same misconception about their instrument. . . . "A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties."

*Newton, supra* at 613, 386 N.W.2d at 430, quoting *Sierra*

*Blanca Sales Co., Inc. v. Newco Industries, Inc.*, 84 N.M. 524, 505 P.2d 867 (1972).

The record shows that the Acceptance policy, which was effective from September 10, 1985, through May 4, 1986, was not written until April 29, 1986. The policy was written then because Thomas Harper, a River City Underwriters employee who had handled the matter prior to April 1986, had failed to obtain a policy from Lloyd's of London. On April 22, 1986, Michael J. Mertz, an underwriter at River City Underwriters, discovered that Harper had not obtained the policy from Lloyd's which would cover $95,000, or 16 percent of the risk. Mertz then arranged for the defendant to issue a short-term policy covering the period from September 10, 1985, to May 4, 1986. The notice of cancellation which was sent to the plaintiffs was intended to advise them that they had no coverage under the defendant's policy after May 4, 1986.

The record further shows that the defendant had issued a similar policy to the plaintiffs in a prior year, but had canceled that policy because it considered the risk substandard. Mertz testified that if the risk had come to his attention at the time it was originally submitted, it would have been declined by the defendant. There is a complete absence of evidence of mistake or fraud on the part of the defendant concerning its intention to write a policy extending beyond May 4, 1986.

There is no evidence that Acceptance intended the policy to be for a term of 1 year from September 10, 1985, to September 10, 1986. Although the Jelsmas intended to obtain a policy for 1 year, Acceptance declined to provide such coverage because the risk did not meet its underwriting standards. Only when River City Underwriters discovered that coverage had not been placed with Lloyd's of London did Acceptance agree to furnish coverage on a short-term basis as an accommodation.

The record further shows that the plaintiffs were aware of a lack of full coverage on their property after several other carriers had canceled policies issued to the plaintiffs. Although Alexander & Alexander was able to obtain additional coverage for the plaintiffs, they decided not to obtain new policies because of the increase in premiums that they would have to pay.

It is unnecessary to consider the other assignments of error.

The judgment is reversed and the cause remanded with directions to dismiss the petition.

REVERSED AND REMANDED WITH DIRECTIONS.