RAYMOND E. RECORDS, M.D., APPELLEE AND CROSS-APPELLANT,
v. GERALD CHRISTENSEN, M.D., APPELLANT AND
CROSS-APPELLEE.

524 N.W.2d 757

Filed December 2, 1994.    No. S-92-1118.

E. Terry Sibbernsen, P.C., and Duane M. Katz for appellant.

Thomas A. Grennan and Francie C. Riedmann, of Gross & Welch, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WHITE, J.

Gerald Christensen appeals from the judgment of the Douglas County District Court requiring him to pay Raymond Records $112,292.91 plus costs for breach of a fee-sharing arrangement; Records cross-appeals from the district court's order denying his motion to require Christensen to pay him prejudgment interest.

Records and Christensen are physicians and board-certified ophthalmologists and were employed by the University of Nebraska Medical Center (UNMC) when they entered into a fee-sharing arrangement in September 1986. The agreement is contained in a letter from Records to Christensen dated September 21, 1986, and agreed to by Christensen when he offered his signature. Records' letter, which constituted the fee-sharing arrangement, provided:

> This letter will serve to confirm our understanding with respect to our sharing the income from our practices. Practices in this context refer only to those activities regulated by the Nebraska Clinician's Group Medical Service Plan. The terms of our agreement are as follows:
>
> 1. The sharing of income ("Arrangement") will be on a 50 - 50 basis and shall commence as of September 1, 1986[.]
>
> 2. The arrangement shall be terminable by either of us on any July 1, by either of us giving thirty days [sic] notice to the other, that is by May 31, and further giving notice to the Professional Fees office of our desire to terminate the arrangement; otherwise, the Arrangement shall run July 1 to June 30 in each academic year in which it has not been terminated.
>
> 3. In the event that the Arrangement is terminated, we agree that accounts receivable collected during the six months following any termination date will be likewise shared equally; however, any production during that period shall be reserved to the producer. As to remaining accounts receivable remaining uncollected at the end of that six month period, we will instruct the Professional Fees office to distribute the avails of the collection to the producer.

4. In the event of our death or disability, we agree that notwithstanding the provisions of Paragraph 2, such death or disability shall be treated as a termination as of the date of death or disability and we will share in accordance with Paragraph 2.

5. Our actions under this letter and agreement shall not constitute us as joint venture [sic] or partners for any purposes. .

The parties shared their fees in accordance with this agreement until January 1989.

In January 1989, Christensen instructed the service that manages professional fees to discontinue the 50-50 fee distribution. Records had taken a leave of absence from UNMC in November 1988 at the request of UNMC's dean and did not return to UNMC until March 15, 1989. Christensen testified that he, therefore, in January 1989, had instructed the Professional Fees Office to discontinue the fee-sharing agreement primarily because he "felt that Dr. Records had basically abrogated the contract." Christensen, however, failed to notify Records of the agreement's termination. Christensen testified:

Q. Did you attempt to send Mr. Records — or excuse me, Dr. Records, a letter at his home address?

A. No, I did not.

Q. Did you try and phone him at his home?

A. No, I did not.

Q. Did you make any attempt to send a certified letter or anything like that to that address?

A. No, I did not.

Q. And so from that period of time of December of '88, January of '89, until sometime until June of '89, did you ever make any attempt whatsoever to — to inform Dr. Records that it was your intent to terminate the agreement?

A. Well, I did see Dr. Records sometime later on in the year. I think he came back to the office in perhaps about April.

Q. Of '89?

A. And we never discussed the matter that I recall.

The district court found that Christensen had failed to give notice as required by the agreement and ordered Christensen to pay Records $112,292.91 plus costs. Christensen appealed to the Nebraska Court of Appeals. We removed this case from the Court of Appeals pursuant to our authority to regulate the caseloads of the appellate courts.

Christensen assigns three errors in his appeal. He contends that the district court erred in (1) failing to find and hold that Records' absence from his normal duties constituted a material breach of the agreement, (2) finding and holding that there was no mutual mistake between the parties sufficient to support a reformation of the agreement, and (3) failing to find and hold that the agreement was not terminated by Records' receipt of actual notice that Christensen had terminated the agreement.

Records cross-appealed. Records assigns two errors in his cross-appeal. He contends that the district court erred (1) in holding that Neb. Rev. Stat. § 45-104 (Reissue 1993) did not authorize prejudgment interest and (2) in holding that Neb. Rev. Stat. § 45-103.02 (Reissue 1993) is the only statute authorizing prejudgment interest and that it operates to the exclusion of § 45-104.

Although the parties argue that this case is an equitable action, it really is an action at law because Records seeks money damages from Christensen for breach of the agreement as Christensen allegedly failed to terminate the agreement according to the contractual notice provision. See *Lone Cedar Ranches v. Jandebeur, ante* p. 769, 523 N.W.2d 364 (1994). In reviewing the district court's judgment for errors appearing on the record, an appellate court will not substitute the district court's factual findings where competent evidence supports those findings. *Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993). Furthermore, the amount of damages to be awarded is solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993).

Christensen's first assignment of error is that the district court erred in failing to find and hold that Records' absence

from his normal duties constituted a material breach of the agreement. However, Records failed to argue this assignment of error either in his brief or during oral argument. We therefore need not consider it. See, *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992); *In re Interest of A.C.*, 239 Neb. 734, 478 N.W.2d 1 (1991).

Christensen's second assignment of error is that the district court erred in finding and holding that there was no mutual mistake between the parties sufficient to support a reformation of the agreement; Christensen contends that the mutual mistake under which the parties were acting was that they would be actively engaged in the practice of medicine. A party's right to reformation of an agreement depends on whether the agreement reflects the parties' intent. *Jelsma v. Acceptance Ins. Co.*, 233 Neb. 556, 446 N.W.2d 725 (1989). A court may reform an agreement when there has been either a mutual mistake or a unilateral mistake caused by fraud or inequitable conduct of the other party. *Id.*; *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985). To overcome the presumption that the agreement correctly expresses the parties' intent and to obtain reformation, the party seeking reformation must offer clear, convincing, and satisfactory evidence. *Jelsma, supra*; *Ridenour, supra*. Clear and convincing evidence is evidence " 'which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved.' " *Haines v. Mensen*, 233 Neb. 543, 547, 446 N.W.2d 716, 719 (1989).

In the case at bar, Christensen seeks reformation of the agreement based on an alleged mutual mistake. A mutual mistake is:

"a belief shared by the parties, which is not in accord with the facts. . . . A mutual mistake is one common to both parties in reference to the instrument to be reformed, each party laboring under the same misconception about their instrument. . . . 'A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties.' "

*Jelsma*, 233 Neb. at 559, 446 N.W.2d at 728 (quoting *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986) (quoting *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.*, 84 N.M. 524, 505 P.2d 867 (N.M. App. 1972), *cert. denied* 84 N.M. 512, 505 P.2d 855)).

The district court found that Christensen had failed to produce clear and convincing evidence to support a finding that a mutual mistake existed sufficient to support reforming the agreement. Christensen also has failed to show in this court how this finding made by the district court was clearly erroneous. In fact, Christensen testified that he would have honored the agreement even if Records had stopped his activities with regard to patient care. Such action would have effectively limited Records to performing only administrative duties, not practicing medicine, as Records had already relinquished his surgical duties. Therefore, Christensen's argument that the parties' agreement should be reformed due to mutual mistake is not supported by competent evidence in the record and is without merit.

Christensen's third assignment of error is that the district court erred in failing to find and hold that Christensen had properly terminated the agreement by instructing the Professional Fees Office to discontinue the 50-50 fee distribution. Paragraph 2 of the agreement provides that "[t]he arrangement shall be terminable . . . by either of us giving thirty days [sic] notice to the other." Although the parties argue at great length about the definition of "notice" under their agreement, that issue is irrelevant in light of Christensen's testimony. The agreement unequivocally required the party desiring to terminate the agreement, Christensen, to personally give notice to the other party, Records, of his intention to terminate the agreement. Christensen testified that he personally had never contacted Records to inform Records of his intention to terminate the agreement. Therefore, the district court properly determined that Christensen was in breach.

Finally, Records, in his cross-appeal, contends that the district court erred by failing to award him prejudgment interest. We have previously held that, to receive prejudgment interest, a litigant must comply with § 45-103.02. *Sayer v.*

*Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993); *Elson v. Pool*, 235 Neb. 469, 455 N.W.2d 783 (1990). See *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). Section 45-103.02 applies to all causes of action arising on or after January 1, 1987, and provides in relevant part:

> [J]udgment interest shall also accrue on decrees and judgments for the payment of money from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:
>
> (1) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;
>
> (2) The offer is made not less than ten days prior to the commencement of the trial;
>
> (3) A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and
>
> (4) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

Records' cause of action did not accrue until 1989; as a result, § 45-103.02 clearly applies. In addition, the record contains no evidence that Records complied with § 45-103.02. Records therefore was not entitled to prejudgment interest on his judgment as he failed to comply with § 45-103.02's requirements. Consequently, the district court properly denied Records' request for prejudgment interest.

Although Records argues that § 45-104 provides an alternative statute to § 45-103.02, under which to award a party prejudgment interest, we have previously rejected that argument. *Knox, supra*. But see *id*. (White, Boslaugh, and Fahrnbruch, JJ., dissenting). Section 45-104 merely provides the interest rate on prejudgment interest in specific types of actions. However, even if a litigant's action is one of those actions listed in § 45-104, that party first must comply with the requirements of § 45-103.02 to be entitled to prejudgment interest at that rate. Therefore, Records' argument that he is

entitled to prejudgment interest is without merit.

For these reasons, we affirm the district court's order.

AFFIRMED.