Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/23/2023 09:07 AM CDT

In re Estate of Jordon R. Wiggins, deceased.
Allison Hardy, as guardian and next friend
of Elizabeth Wiggins and Leah Wiggins,
minor children, appellant, v. Jason Wiggins,
as interested party, and Robert Wiggins,
as Personal Representative of the
Estate of Jordon R. Wiggins,
deceased, appellees.

___ N.W.2d ___

Filed June 23, 2023.    No. S-22-543.

1. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
2. **Contracts: Reformation: Equity.** An action to reform a contract sounds in equity.
3. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
4. **Actions: Rescission: Equity.** An action for rescission sounds in equity.
5. **Contracts.** A settlement agreement is subject to the general principles of contract law.
6. **Reformation.** Reformation is based on the premise that the parties had reached an agreement concerning an instrument, but while reducing their agreement to a written form, and as the result of mutual mistake or fraud, some provision or language was omitted from, inserted, or incorrectly stated in the instrument intended to be an expression of the actual agreement of the parties.
7. **Reformation: Fraud.** Reformation may be ordered where there has been a mutual mistake or where there has been a unilateral mistake caused by the fraud or inequitable conduct of the other party.

8. **Reformation: Intent.** A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties.

9. **Contracts: Rescission.** Rescission may be granted where the parties have apparently entered into a contract evidenced by a writing, but owing to a mistake, their minds did not meet as to all the essential elements of the transaction, so that no real contract was made by them.

10. \_\_\_\_: \_\_\_\_. Generally, grounds for cancellation or rescission of a contract include fraud, duress, unilateral or mutual mistake, and inadequacy of consideration.

11. **Equity.** Equity strives to do justice; it is not a rigid concept, but, instead, is determined on a case-by-case basis according to concepts of justice and fairness.

12. **Contracts: Rescission: Parties.** The purpose of rescission is to place the parties in a status quo, that is, return the parties to their position which existed before the rescinded contract.

Appeal from the County Court for Douglas County: Sheryl L. Lohaus, Judge. Reversed and remanded with directions.

Jarrod D. Reece, of Likes Meyerson Hatch, L.L.C., for appellant.

Jaynee M. Tyler and Brenda K. Smith, of Dvorak Law Group, L.L.C., for appellee Jason Wiggins.

Adam J. Wachal and James A. Tews, of Koley Jessen, P.C., L.L.O., for appellee Robert Wiggins.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.
## INTRODUCTION
The decedent's brother; the decedent's ex-wife, as guardian and next friend of the minor children; and the decedent's father, as personal representative of the decedent's estate, entered into a settlement agreement to resolve a claim against the estate regarding life insurance coverage that the decedent

was required under a divorce decree to maintain for the children's benefit. Subsequently, the parties jointly petitioned the county court for Douglas County, Nebraska, for a declaration of their rights and obligations under the agreement. The county court ruled in favor of the brother and reformed the agreement accordingly. The ex-wife appeals. We reverse the judgment and remand the cause to the county court with directions to rescind the settlement agreement and conduct further proceedings not inconsistent with this opinion.

## BACKGROUND

Jordon R. Wiggins died on August 28, 2019. Prior to his death, Jordon executed a will, which established the Jordon R. Wiggins Family Trust (the Trust) for his children's benefit. Jordon's father, Robert Wiggins, was appointed personal representative of Jordon's estate on October 17, 2019.

Jordon was previously married to Allison Hardy, and two minor children, Elizabeth Wiggins and Leah Wiggins, were born to them during the marriage. The divorce decree required Jordon and Allison each to "maintain a life insurance policy" of at least $250,000 "to provide for the minor children" if Jordon or Allison died.

On December 20, 2019, Allison brought a claim for $250,000 plus interest against the estate on the children's behalf, alleging that the personal representative had not yet identified any life insurance policy maintained by Jordon for the children's benefit. However, after the claim was brought, Jordon's former employer informed Jordon's brother, Jason Wiggins, that Jason was the sole beneficiary of Jordon's two employer-provided life insurance policies, valued at $360,000 total.

Subsequently, on or around June 2, 2020, Jason, as an interested party; Allison, on behalf of the minor children; and Robert, as personal representative, agreed to settle Allison's claim against the estate. The settlement agreement began by acknowledging that "to the best of the [p]arties'

knowledge," Jordon had not designated the children as beneficiaries of a life insurance policy of at least $250,000. The agreement then called for Jason to "gift" $250,000 of the insurance proceeds that he received to the Trust, whereupon Allison would withdraw the claim.

However, after they entered the settlement agreement, the parties learned that Jordon's daughter Elizabeth was actually the beneficiary of one of Jordon's life insurance policies, while Jason was the beneficiary of the other policy. Thereafter, the insurer paid $120,000 "directly" to Elizabeth; this money was not placed in the Trust. The insurer also paid $240,000 to Jason, who then paid $130,000 into the Trust and retained $110,000. Allison took issue with Jason's action, arguing that he was required under the divorce decree, the settlement agreement, and Nebraska law to pay the entire $240,000 into the Trust for the children.

The parties jointly asked the county court to declare their rights and obligations as to the life insurance proceeds and, in particular, whether Jason must pay the remaining $110,000 into the Trust. Simultaneously with their joint motion for declaratory judgment, the parties submitted a joint stipulation of facts, which recited the foregoing facts as to the divorce decree, the settlement agreement, and the discovery that Jordon had a life insurance policy for Elizabeth's benefit.

At the hearing on the motion for declaratory judgment, Jason argued that the settlement agreement should be rescinded on various grounds, including the parties' mutual mistake as to Jordon's life insurance coverage. Alternatively, Jason argued that the agreement should be reformed due to this mutual mistake. Allison countered that there was no basis for reformation or rescission, because the agreement in its written form correctly expressed the parties' intent at the time they entered the agreement and Jason assumed the risk of mistake. Allison and Jason also disagreed as to whether Jordon's designation of Jason as the beneficiary of a life

insurance policy was effective under *Jantzen v. Jantzen*[1] and related cases, or whether those cases apply only to changes in beneficiaries made after the entry of a divorce decree. The personal representative took no position on these matters.

The county court ruled in Jason's favor. The county court found that Jordon had partially satisfied his obligations under the divorce decree by providing a $120,000 policy for Elizabeth's benefit and that the use of the word "gift" in the settlement agreement reflected the parties' understanding that Jason had no legal obligation to pay any life insurance proceeds to the Trust. Accordingly, the county court ordered that the $130,000 that Jason paid into the Trust satisfied his obligation under the settlement agreement, because he was entitled to a credit of $120,000 for the life insurance proceeds that Elizabeth received. Believing that this $120,000 had been placed in the Trust, the county court also ordered that the $250,000 received into the Trust for the children's benefit satisfied the claim against the estate. It ordered that the settlement agreement be reformed accordingly.

Allison appeals, and we moved the matter to our docket.[2]

## ASSIGNMENTS OF ERROR

Allison's brief on appeal assigns multiple errors. However, because they are dispositive, we need address only her assignments, restated, that the county court erred in reforming the settlement agreement and failing to declare that Jason is required to pay the remaining $110,000 in life insurance proceeds into the Trust.

## STANDARD OF REVIEW

[1-4] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one

---

[1] *Jantzen v. Jantzen*, 257 Neb. 78, 595 N.W.2d 230 (1999).

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

in equity is to be determined by the nature of the dispute.[3] An action to reform a contract sounds in equity.[4] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[5] The same standard applies to an action for rescission, which also sounds in equity.[6]

## ANALYSIS

Allison argues that the settlement agreement should be enforced against Jason because the agreement as written accurately reflects the parties' intent at the time they signed the agreement. As such, she argues, there is no mutual mistake warranting reformation or rescission. Alternatively, she argues that insofar as the parties were mistaken about Jordon's insurance coverage, Jason bears the risk of mistake, because he signed the agreement "despite being fully aware that he had limited facts regarding what (if anything) he would ultimately receive from the life insurance company."[7] Jason counters that the agreement should be reformed or rescinded because "both parties were influenced by inaccurately presented facts" when drafting the agreement.[8] We agree with Allison that the county court erred in reforming the agreement; however, contrary to Allison's argument that the agreement is enforceable, we find that it should be rescinded.

---

[3] *Malousek v. Meyer*, 309 Neb. 803, 962 N.W.2d 676 (2021).

[4] *R & B Farms v. Cedar Valley Acres*, 281 Neb. 706, 798 N.W.2d 121 (2011).

[5] *Darling Ingredients v. City of Bellevue*, 313 Neb. 853, 986 N.W.2d 757 (2023).

[6] See *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015).

[7] Brief for appellant at 33.

[8] Brief for appellee Jason at 21.

[5] As we have previously stated, a settlement agreement is subject to the general principles of contract law.[9] This means that settlement agreements are subject to reformation and rescission (also referred to in our opinions as cancellation). Both reformation and rescission are equitable remedies that can relieve a party from performing obligations under a contract or an apparent contract. However, although reformation and rescission have been described as "analogous,"[10] they differ in their bases and effects. In particular, as relevant here, reformation and rescission differ in what constitutes a mutual mistake warranting equitable relief under Nebraska law.

[6,7] We turn first to reformation. Reformation is based on the premise that the parties had reached an agreement concerning an instrument, but while reducing their agreement to a written form, and as the result of mutual mistake or fraud, some provision or language was omitted from, inserted, or incorrectly stated in the instrument intended to be an expression of the actual agreement of the parties.[11] In such cases, reformation may be granted to correct an erroneous instrument to express the true intent of the parties to the instrument.[12] Specifically, reformation may be ordered where there has been a mutual mistake or where there has been a unilateral mistake caused by the fraud or inequitable conduct of the other party.[13]

[8] For purposes of reformation, a mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties.[14]

---

[9] *Village of Memphis v. Frahm*, 287 Neb. 427, 843 N.W.2d 608 (2014).

[10] *Boyd v. Realty Co.*, 131 W. Va. 150, 157, 46 S.E.2d 633, 637 (1948).

[11] *Jelsma v. Acceptance Ins. Co.*, 233 Neb. 556, 446 N.W.2d 725 (1989).

[12] *Id*.

[13] *Id*.

[14] *R & B Farms, supra* note 4.

For example, in *Newton v. Brown*,[15] we found a mutual mistake warranting reformation where because of a scrivener's error, a deed failed to include a reservation of mineral rights that was provided for in the contract for the sale of the property. Similarly, in *Johnson v. Stover*,[16] we found a mutual mistake warranting reformation where because of the "inequitable conduct" of a party, the deed did not correctly describe the land that the parties had agreed would be conveyed.

[9,10] Rescission, in contrast, may be granted where the parties have apparently entered into a contract evidenced by a writing, but owing to a mistake, their minds did not meet as to all the essential elements of the transaction, so that no real contract was made by them.[17] Generally, grounds for cancellation or rescission of a contract include fraud, duress, unilateral or mutual mistake, and inadequacy of consideration.[18]

When used in reference to rescission, however, the term "mutual mistake" is not limited to a mistake in drafting the instrument.[19] Instead, it refers to a mistake of fact "in the making of the contract. . . . If there has been any misunderstanding between the parties, or a misapprehension by one or both, so that there is no mutuality of assent, then the parties have not made a contract, and neither will the court do so for them."[20] Specifically, for purposes of rescission, a mutual mistake of fact must relate to either a present or past fact or

___

[15] *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986). See, also, *Nebraska State Bank v. Pedersen*, 234 Neb. 499, 452 N.W.2d 12 (1990) (reformation warranted where there was clear and convincing evidence parties intended two persons as mortgagors, but their names were excluded from grantor's clause in mortgage due to scrivener's error).

[16] *Johnson v. Stover*, 218 Neb. 250, 256, 354 N.W.2d 142, 146 (1984).

[17] See *In re Estate of Potthoff*, 6 Neb. App. 418, 573 N.W.2d 793 (1998).

[18] *Turbines Ltd. v. Transupport, Inc.*, 285 Neb. 129, 825 N.W.2d 767 (2013).

[19] 27 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 70:19 (4th ed. 2020).

[20] *Id*. at 241-42.

facts that are material to the contract, and not to an opinion as to future conditions as the result of present known facts.[21]

This difference as to what constitutes a mutual mistake for purposes of reformation and for purposes of rescission means that a mistake which is not ground for reformation may give a right to rescind, as we explained over a century ago in *Farmers Loan & Trust Co. v. Suydam*.[22] The parties in *Suydam* were unaware of a tax lien from a specific year when they drafted a deed. We found that reformation was not warranted because the "deed was made by the parties precisely as they intended it."[23] Nonetheless, we found that rescission was appropriate due to the mutual mistake of fact, which precluded a meeting of the minds. More recently, the Nebraska Court of Appeals took a similar view in *Stitch Ranch v. Double B.J. Farms*,[24] finding that recission was warranted where the parties attached different meanings to a phrase used in the contract. After observing that "nobody has asserted [the phrase] was a nonessential term," the Court of Appeals concluded that there was no meeting of the minds as to the term.[25]

In the present case, Allison is correct that there was no mutual mistake for purposes of reformation. No one has argued that any provision or language was omitted from, inserted in, or incorrectly stated in the settlement agreement as written, causing it to differ from the parties' intent. To the contrary, the parties jointly stipulated that "[t]he [s]ettlement [a]greement accurately reflects the agreement that the parties hereto reached on or about June 2, 2020." As such, the county court erred in reforming the settlement agreement. We offer

---

[21] *Oliver v. Clark*, 248 Neb. 631, 537 N.W.2d 635 (1995).

[22] *Farmers Loan & Trust Co. v. Suydam*, 69 Neb. 407, 95 N.W. 867 (1903).

[23] *Id*. at 410, 95 N.W. at 868.

[24] *Stitch Ranch v. Double B.J. Farms*, 21 Neb. App. 328, 837 N.W.2d 870 (2013).

[25] *Id*. at 352, 837 N.W.2d at 887.

no opinion regarding Allison's related arguments that refor-
mation was erroneous because the county court mistakenly
believed Jason had a legal right to the life insurance proceeds
and improperly inferred the parties' intent from their use of
the word "gift" in the settlement agreement.[26]

The situation is different as to rescission. Here, as in
*Suydam* and *Stitch Ranch*, the evidence clearly and convinc-
ingly shows that the parties were mutually mistaken as to
a fact which was a material inducement for the contract.
Specifically, their mutual mistake of fact was their belief that
Jordon failed to maintain any life insurance for the benefit of
the children and instead named Jason as the sole beneficiary.
The parties acknowledge this in the stipulated facts, stating
as follows:

> At the time of entering into the [s]ettlement [a]greement,
> the parties hereto had been informed by the relevant
> insurance companies and [Jordon's] previous employers,
> and they therefore believed, that [Jordon] had not named
> either of the [m]inor [c]hildren as beneficiaries on any
> life insurance policy. Instead, they were under the impres-
> sion that [Jordon] had named his brother, Jason . . . , as
> the beneficiary on . . . a life insurance policy or policies
> maintained through his previous employer . . . in the
> aggregate amount of $360,000.00.

Both the settlement agreement and the stipulated facts
similarly show that this mutual mistake of fact was a mate-
rial inducement to the agreement. The settlement agreement
recites the parties' belief that Jordon maintained no life
insurance for the children and that Jason was the beneficiary
of Jordon's life insurance policy or policies immediately
before, stating:

---

[26] Cf. *Avis Rent A Car Sys. v. McDavid*, 313 Neb. 479, 984 N.W.2d 632
(2023) (appellate court not obligated to engage in analysis that is not
necessary to adjudicate case and controversy before it).

[Jason] desires to gift $250,000.00 of this life insurance policy to [the Trust] to be held and administered for the benefit of [the children] in exchange for [Allison's] release of [the claim against the estate.]

. . . [t]he parties desire to enter into this [a]greement to satisfy and release [the claim] and to fulfill the terms and provisions of the [divorce decree].

The stipulated facts likewise link Jason's receipt of life insurance proceeds and his subsequent payment of $250,000 into the Trust with the withdrawal of the claim against the estate.

The fact that the settlement agreement does not expressly call for Jason to retain any life insurance proceeds is immaterial. Allison suggests that the absence of such language indicates that it was not the "purpose of any party for Jason to ultimately receive *any* life insurance proceeds."[27] However, Jason does not argue that it was. Instead, he references the parties' initial belief that he was to receive $360,000 and his ultimate receipt of $240,000 solely to argue that "[w]hen drafting the [s]ettlement [a]greement, both parties were influenced by inaccurately presented facts. . . . On its face, the [s]ettlement [a]greement calls for Jason to pay money that he did not receive from the life insurance proceeds."[28]

Alternatively, Allison argues that if there was a mistake, equitable relief is not warranted because Jason assumed the risk of mistake. Allison points to language in the settlement agreement stating that "to the best of the [p]arties' knowledge," the minor children are not the designated beneficiaries of a life insurance policy of at least $250,000. She relies on case law from other jurisdictions to argue that this phrase "inherently 'embodies a level of uncertainty.'"[29] She also argues that Jason signed the settlement agreement despite

---

[27] Brief for appellant at 18.

[28] Brief for appellee Jason at 21.

[29] Brief for appellant at 32 (quoting *Berg v. Berg*, No. M2018-01163-COA-T10B-CV, 2018 WL 3612845 (Tenn. App. July 27, 2018)).

not knowing how much money he would ultimately receive and without the inclusion of language stating that he would be credited with any life insurance proceeds that Jordon was later found to have provided for the children. We disagree.

The two cases cited by Allison regarding the meaning of the phrase "to the best of the [p]arties' knowledge" do not involve reformation or rescission and, as such, do not address the role of such language in determining whether a particular party assumed the risk of mistake.[30] However, even if we were to construe the settlement agreement's language consistently with those cases to mean that the parties had limited knowledge about Jordon's insurance coverage, that does not necessarily mean that Jason assumed the risk of mistake under the present circumstances.

Notably, this is not a case where the party who purportedly assumed the risk had limited knowledge because he or she failed to make inquiries that reasonably would be expected of a person in the party's position.[31] To the contrary, the parties jointly stipulate that when they entered the settlement agreement, they had been "informed by the relevant insurance companies and [Jordon's] previous employers, and they therefore believed, that [Jordon] had not named either of the [m]inor [c]hildren as beneficiaries on any life insurance policy."

It is also not a case where one party should be deemed to bear the risk of mistake because that party is experienced in or has superior knowledge about a certain type of transaction.[32] Allison cites to such a case, *State v. Alba*,[33] in support of her argument that Jason assumed the risk. In *Alba*, the

---

[30] See, e.g., *Muskin v. Assessments*, 422 Md. 544, 30 A.3d 962 (2011); *Berg, supra* note 29.

[31] 27 Lord, *supra* note 19 §§ 70:69 (discussing, inter alia, *DeVenney v. Hill*, 918 So. 2d 106 (Ala. 2005)) and 70:77 (discussing, inter alia, *Land Baron Inv. v. Bonnie Springs Family LP*, 131 Nev. 686, 356 P.3d 511 (2015)).

[32] *Id*.

[33] *State v. Alba*, 13 Neb. App. 519, 697 N.W.2d 295 (2005).

Nebraska Court of Appeals found that the risk of a mutual mistake of law as to a plea bargain should be placed upon the State, not the defendant, because prosecutors "must be held to know the very simple and fundamental law essential to their duties—the classification of the felonies involved in the plea bargains they are about to strike."[34] However, a similar, professional duty-based rationale for assigning the risk of mistake to a specific party is lacking here.

[11] Accordingly, we decline to find that Jason assumed the risk of mistake when signing the settlement agreement, even though the agreement stated that "to the best of the [p]arties' knowledge," Jordon had failed to provide life insurance coverage for the minor children. Under the standard previously noted, recission sounds in equity. Equity strives to do justice; it is not a rigid concept, but, instead, is determined on a case-by-case basis according to concepts of justice and fairness.[35] Here, it does not seem just and fair to require Jason to pay an additional $110,000—which would result in a total of $360,000 in life insurance proceeds' being available to the children—where the divorce decree contemplated a minimum of $250,000 in life insurance proceeds, Elizabeth received $120,000 of life insurance proceeds directly from the insurer, and Jason has already paid $130,000 into the Trust, which is available to both Elizabeth and Leah.

Allison's suggestion that Jason waived his argument that there was a "mutual mistake of fact between the parties"[36] is similarly without merit. Allison argues that Jason "change[d] his argument" on appeal by citing a case and a proposition of law regarding mutual mistakes of fact, after having relied on cases involving scrivener's errors before the county court.[37] However, even if we were to construe the cases that

---

[34] *Id*. at 534-35, 697 N.W.2d at 307.

[35] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

[36] Brief for appellee Jason at 21.

[37] Reply brief for appellant at 12.

Jason cited below as limited to scrivener's errors, as Allison argues, Jason nonetheless made clear to the county court that his claim for equitable relief was based on a mutual mistake of fact, not a purported scrivener's error. Jason's brief on the motion for declaratory judgment, which is part of the record on appeal, states that there was a "mutual mistake of fact between the parties regarding the beneficiary of the Term Policy." Jason similarly stated in oral arguments before the county court that all parties to the settlement agreement were operating under the assumption that Jason was the sole beneficiary of Jordon's life insurance policies. As such, the present case is distinguishable from those cases where we have held that a party waived an argument by failing to raise it before the trial court.[38]

[12] The purpose of rescission is to place the parties in a status quo, that is, return the parties to their position which existed before the rescinded contract.[39] In their briefs on appeal, both Allison and Jason contemplate further proceedings or, alternatively, agreements between them and the estate to address related matters. Among those matters is the estate's disallowance of Allison's claim for $250,000 plus interest, about which the estate notified Allison after the joint motion for declaratory judgment was filed, but prior to the hearing on that motion before the county court.[40] Allison subsequently petitioned the county court for allowance of her claim, with a credit of $130,000 for the payment that Jason made to the Trust, and that claim remains pending.

---

[38] See, e.g., *Noah's Ark Processors v. UniFirst Corp.*, 310 Neb. 896, 970 N.W.2d 72 (2022).

[39] *Cinatl v. Prososki*, 307 Neb. 477, 949 N.W.2d 505 (2020).

[40] Cf. *In re Estate of Dickie*, 261 Neb. 533, 623 N.W.2d 666 (2001) (failure of personal representative of estate to give timely notice of disallowance of claim against estate did not preclude personal representative from thereafter disallowing claim).

## CONCLUSION

A mutual mistake as to the existence of a fact that was a material inducement to the contract is not ground for reformation, although it may be ground for rescission. Accordingly, we reverse the judgment of the county court and remand the cause with directions for the county court to rescind the settlement agreement and conduct further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.