Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/24/2023 09:06 AM CDT

Jo Lynn Slama, appellee and cross-appellee,
v. Ken Michael Slama and Jason T.
Slama, appellees and cross-appellees,
Norman L. Slama II, appellee and
cross-appellant, and John M.
Sandahl, appellant.

___ N.W.2d ___

Filed March 24, 2023.    No. S-22-122.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
2. **____: ____.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
3. **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.
4. **Contracts: Intent.** When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract.
5. **Contracts: Parties: Intent.** To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.
6. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue

regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

7. ____. Not all issues of fact preclude summary judgment, but only those that are material.

8. ____. In the summary judgment context, a fact is material only if it would affect the outcome of the case.

9. **Appeal and Error.** Error without prejudice provides no ground for relief on appeal.

Appeal from the District Court for Wayne County: James G. Kube, Judge. Affirmed.

David C. Briese, of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., for appellant.

Andrew D. Weeks and J. Michael Hannon, of Baylor Evnen, L.L.P., for appellee Jo Lynn Slama.

Mark D. Fitzgerald, of Fitzgerald, Vetter, Temple, Bartell & Henderson, for appellee Ken Michael Slama.

Keelan Holloway, of Monson & Holloway Law Offices, P.C., L.L.O., for appellee Norman L. Slama II.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

This action arises from a contract to sell a farm. The farm was one of several properties subject to a real estate agreement between four siblings. The siblings' agreement called for them to give one another notice and a right of first refusal before selling the covered properties. When the sibling who owned the farm contracted to sell it to a third party, the present litigation arose regarding the siblings' compliance with the notice and right of first refusal terms of their agreement. The district court for Wayne County, Nebraska, voided the

contract for the farm's sale, finding that notice of the offer to one sibling was defective and never triggered her right of first refusal. As to another sibling, the district court found that the sibling was not given sufficient time to exercise his right of first refusal. The present appeal followed. We affirm on somewhat different grounds.

## BACKGROUND

Upon his death, Norman L. Slama devised his property equally among his children, Norman L. Slama II (Norman), Jo Lynn Slama, Ken Michael Slama, and Jason T. Slama. The siblings subsequently entered a settlement agreement as to the distribution of the property. As part of that settlement, they entered a real estate agreement, which was duly recorded in Wayne County.

The real estate agreement provided, in relevant part, that seven of the eight parcels of real estate devised to the siblings were to be held jointly by Jo, Ken, and Jason. The eighth parcel, which consisted of the farm at issue here, was to be held solely by Norman. The real estate agreement also provided that if Norman sold the farm, Jo, Ken, and Jason would "have equal rights of first refusal to purchase" it. Specifically, the agreement prescribed that an "offer [to purchase the farm] shall be communicated" to Norman's siblings by certified mail. The siblings would then have 14 days to notify Norman in writing by certified mail of their intent to exercise their right of first refusal. The agreement further prescribed that the sale of property to individuals exercising their right of first refusal shall be upon the "same terms and conditions as may be offered by any bona fide purchaser."

### Sandahl's Offer to Purchase
### Norman's Farm

On March 1, 2021, John M. Sandahl offered to purchase Norman's farm after renting it for several years. The written purchase offer was less than one page in length and stated, in relevant part, that Sandahl would pay $10,000 per

acre for approximately 226.41 acres, less a building site of approximately 4 acres reserved by Norman, for a total price of approximately $2,224,100. There was no mention in the purchase offer that possession of the farm was subject to a lease.

Two days later, on March 3, 2021, Norman sent letters to Jo, Ken, and Jason by certified mail restating Sandahl's offer. Ken received his letter on March 6 and opened it on March 7, during a phone call with Jo, wherein he appraised her of its contents. Jo was notified on or around March 6 that there was a certified letter to be delivered to her. However, delivery was never effectuated, and her letter was ultimately returned to Norman undelivered. The district court found that it was unclear from the record whether Jason received his letter "as he did not respond." Jason has not actively participated in this litigation.

Subsequently, on or around March 15, 2021, Norman sent Jo a copy of Sandahl's offer via regular mail, which she received on March 22. Also on or about March 22, Ken verbally told Norman's attorney that he intended to exercise his right of first refusal to purchase the farm. Ken did not provide written notice by certified mail. Nonetheless, the attorney gave him an unsigned purchase agreement. That agreement was five pages long and provided, in relevant part, that the buyer would pay $10,000 per acre for approximately 226.41 acres, less a building site of approximately 5.62 acres reserved by Norman, for a total price of approximately $2,207,900. The agreement also provided that the buyer took possession of the farm subject to a lease expiring on March 1, 2022, but would receive the 2021 cash rent. Although not stated in the agreement, Sandahl was the lessee.

On or around March 31, 2021, Norman's attorney and Ken spoke by phone about the sale of the farm. The attorney informed Ken that his 14 days had expired and that Jo's 14 days would expire on Friday, April 2. However, the attorney also told Ken that he and Jo had until the close of

business on April 2 to notify Norman of their intent to exercise their right of first refusal. Otherwise, Norman intended to sign a contract with Sandahl on Saturday, April 3.

Ken did not provide written notice within that time. However, at approximately 9:40 p.m. on April 2, 2021, Jo faxed Norman's attorney a letter acknowledging that she had received the March 15 mailing, but asserting that it was improperly sent by regular mail. Jo asked that the notice be resent by certified mail. Alternatively, she offered to waive the deficiency if Norman would accept her letter as notice of her intent to exercise her right to purchase the farm on the terms set forth in Sandahl's offer. Jo specifically observed that that "Offer does not retain a lease for farm year 2021." Jo subsequently sent the letter by certified mail on Saturday, April 3. The attorney did not see Jo's fax until Sunday, April 4.

Meanwhile, on April 3, 2021, Norman contracted to sell the farm to Sandahl. Like the purchase agreement given to Ken, the purchase agreement here provided that the buyer would pay $10,000 per acre for approximately 226.41 acres. The agreement also provided that the buyer took possession of the farm subject to a lease.

## Jo's Lawsuit and Sandahl's and
## Norman's Counterclaims

Jo then filed suit, alleging that Norman had failed to comply with the terms of the siblings' real estate agreement when notifying her of Sandahl's offer. She asked the court to enjoin Norman from transferring the farm to Sandahl and to require Norman to sell it to her on the same terms as in Sandahl's offer. Alternatively, she sought a declaration of the siblings' rights and responsibilities under the real estate agreement or to quiet title to the farm in her.

Sandahl then brought a counterclaim and cross-claim, asking the court to declare the contract for the farm's sale to be valid. He alleged that Jo and Ken had received

sufficient notice of the offer, but failed to give proper notice of their intent to exercise their right of first refusal. Subsequently, Ken also brought a counterclaim and cross-claim, seeking to be permitted to purchase the farm on the same terms offered to Sandahl.

## Cross-Motions for Summary Judgment

Following discovery, all parties moved for summary judgment. At the hearing on their cross-motions, Jo and Ken argued that they were not given sufficient notice of the offer. Jo, in particular, asserted that she did not receive notice by certified mail. She and Ken also asserted that the letters sent on March 3, 2021, failed to mention that possession of the farm was subject to a lease. Sandahl and Norman, in turn, argued that notice of the offer was properly sent to Jo and Ken, but that Jo's and Ken's notice of intent to exercise their right of first refusal was defective. Sandahl also argued that there was no material difference between his initial purchase offer and his eventual contract with Norman because the price per acre remained $10,000.

## District Court Decision

On February 21, 2022, the district court ruled in favor of Jo and Ken, finding, as to Jo, that Norman's notice to her of Sandahl's offer was defective and did not effectively trigger her right of first refusal. As to Ken, the district court similarly found that while he was notified of the existence of the lease on March 22, 2021, Sandahl and Norman "effectively terminated his ability" to exercise his right of first refusal by entering into their agreement for the sale of the farm. In so finding, the district court reasoned that the lease's existence was "just as material as the gross purchase price" and thus had to be communicated to Jo and Ken as part of the notice of the offer. The district court also rejected the view that Jo and Ken had a duty to inquire into the existence of a potential lease.

The district court voided the contract for the farm's sale and ordered that Jo and Ken had until 5 p.m. on March 9, 2022, to provide written notice of their intent to exercise their right of first refusal to Norman. March 9 was more than 14 days after the court issued its order. However, at a hearing on March 2, Jo's attorney informed the court that Jo and Ken had provided the requisite notice to Norman's counsel on February 22 and that Jo and Ken had executed a purchase agreement which was being tendered to Norman the day of the hearing. At that same hearing, the court indicated that the record would reflect delivery of notice by Jo and Ken.

Sandahl appeals, and although designated as an appellee, Norman cross-appeals.[1] We moved the matter to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Sandahl assigns 10 errors. Four of those assignments relate to his motion for summary judgment. He assigns, restated, that the district court erred in finding that notice of the offer was defective, rewriting the siblings' real estate agreement to require notice of the material terms of the sale, finding that Jo and Ken had no duty to investigate his offer, and overruling his motion for summary judgment.

Two other assignments of error by Sandahl pertain to Jo's and Ken's motions for summary judgment. Sandahl assigns, restated, that the district court erred in finding that there were no genuine issues of material fact as to Jo's and Ken's lack of knowledge of the lease and entering summary judgment in their favor.

The remaining four assignments of error by Sandahl pertain to the court order regarding Jo's and Ken's exercise of

---

[1] See Neb. Ct. R. App. P. § 2-109 (rev. 2022) (where appellee submits brief purporting to be brief of appellant, which complies with rules regarding appellant's brief and does not take issue with errors asserted by appellant, it is within appellate court's discretion to treat such brief as brief on cross-appeal).

their right of first refusal after the contract for the farm's sale was voided. Sandahl assigns, restated, that the district court erred in failing to strictly construe the option to purchase the farm—extending the option to purchase the farm beyond its express provisions and adding to or altering those provisions—and not requiring that Jo and Ken conform with the manner of acceptance set forth in the siblings' real estate agreement.

Norman similarly assigns, restated, on cross-appeal that the district court erred in (1) weighing the evidence before it on a motion for summary judgment and deciding the disputed issues, rather than determining whether there were genuine issues of material fact and halting its inquiry there; (2) "impos[ing] terms of a leasehold tenancy . . . to the right of first refusal and option agreement"; and (3) rewriting the real estate agreement when providing for Jo and Ken to exercise their right of first refusal after the contract was voided.

## STANDARD OF REVIEW

[1,2] An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3]

[3] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[4]

---

[2] *Jacob v. Nebraska Bd. of Parole, ante* p. 109, 982 N.W.2d 815 (2022).

[3] *Id.*

[4] *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019).

## ANALYSIS

### WHETHER NOTICE OF OFFER WAS DEFECTIVE AND WHETHER THERE WAS DUTY TO INVESTIGATE

In the first category of assigned errors, Sandahl and Norman raise various arguments supporting their view that the contract for the sale of the farm was valid. Because we find them to be dispositive, we first address the arguments that the district court erred in finding that notice of the offer was defective and that Jo and Ken had no duty to investigate the terms of Sandahl's offer. We find no error here, although our reasoning differs somewhat from that of the district court.[5]

[4] As the parties appear to agree that the siblings' real estate agreement is a valid contract, we assume, without deciding, that it is such. Accordingly, we construe it as we would any other contract to give effect to the parties' intentions at the time the contract was made.[6] When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[7] In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract.[8]

Sandahl and Norman argue that the notice that Jo and Ken received of Sandahl's offer was sufficient under the terms of the siblings' real estate agreement. Sandahl, in particular, argues that the agreement requires only that an "offer [to purchase the farm] shall be communicated." He argues that the agreement does not prescribe that the notice "include

---

[5] See, e.g., *Edwards v. Estate of Clark, ante* p. 94, 982 N.W.2d 788 (2022) (appellate court may affirm lower court's ruling that reaches correct result, albeit based on different reasoning).

[6] See *Baye v. Airlite Plastics Co.*, 260 Neb. 385, 618 N.W.2d 145 (2000).

[7] *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

[8] *Id*.

material terms of the sale other than what was included in the offer."[9] Nor does it "put any obligation on Norm[an] to agree with Sandahl on any specific terms that were not included in Sandahl's offer before providing notice of the offer to his siblings."[10] As such, Sandahl and Norman argue that the letters Norman sent to Jo and Ken on March 3, 2021, were not defective, because they restated the terms of Sandahl's actual offer. That offer made no mention of a lease, and as such, Norman had no obligation to "include any information about a lease . . . in the notice of the offer sent to his siblings."[11] We disagree.

[5] The siblings' real estate agreement contains no definition of the term "offer." However, standard definitions of that term, as well as our decisions regarding contract formation, make clear that an offer consists of specific terms and that when those terms change, a new offer results. For example, Black's Law Dictionary defines "offer" to mean "a display of willingness to enter into a contract on specified terms, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract."[12] Our case law similarly holds that to create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.[13] Specifically, an enforceable contract requires a meeting of

---

[9] Brief for appellant at 18.

[10] *Id*.

[11] *Id*.

[12] Black's Law Dictionary 1304 (11th ed. 2019). See, also, Merriam-Webster's Collegiate Dictionary 861 (11th ed. 2020) (similar definition).

[13] *Acklie v. Greater Omaha Packing Co.*, 306 Neb. 108, 944 N.W.2d 297 (2020). Cf. *1836 S Street Ten. v. Estate of B. Battle*, 965 A.2d 832, 839 (D.C. 2009) ("[a] valid 'offer' must contain all of the material terms of the bargain, and if such an offer is accepted, the bargain is enforceable even if the parties never reach agreement on the non-material terms").

the minds "as to the essential terms and conditions of the proposed contract."[14]

Accordingly, we have found that when the conditions of the offer are varied or supplemented, it is a new offer (often described as a counteroffer, if made by the offeree).[15] New offers are also "offers" for purposes of the siblings' real estate agreement. As such, we reject Sandahl's and Norman's argument that the term "offer" meant Sandahl's initial offer, as well as their apparent suggestion that they could change the essential terms of their bargain without any notice to Jo and Ken.

In the present case, it is undisputed that Sandahl's initial offer, described in the March 3, 2021, letters to Jo and Ken, did not provide that possession of the farm was subject to a lease. That makes sense. While Sandahl had previously leased the farm, he would have had no need to do so after purchasing it. However, subsequently, Norman and/or Sandahl apparently decided to include provisions ensuring that Sandahl could continue to lease the farm if it were sold to Jo and Ken.

Sandahl does not appear to argue on appeal that the existence of the lease was not a material term of the farm's sale; at least, he does not assign that the district court erred in finding that the lease's existence was "just as material as the gross purchase price." Norman does assign that the trial court erred in "impos[ing] terms of a leasehold tenancy . . . to the right of first refusal and option agreement." However, we understand the substance of Norman's argument here to be that the terms of the lease are separate from those of Jo's and Ken's option to purchase the farm. We also note that the right to possession is one of the primary incidents of ownership

---

[14] *Gibbons Ranches v. Bailey*, 289 Neb. 949, 954, 857 N.W.2d 808, 813 (2015).

[15] See, e.g., *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991).

in fee simple.[16] As such, once a term providing that possession of the farm was subject to a lease was added to Sandahl and Norman's agreement, there was a new offer, which was required to be communicated to Jo and Ken under the terms of the siblings' real estate agreement.

Ken was effectively notified of the new offer on March 22, 2021, when he was given the purchase agreement. However, as the district court found, Sandahl and Norman did not allow Ken 14 days to determine whether he wanted to exercise his right of first refusal to purchase the farm on the new terms, as was required under the siblings' real estate agreement, before entering into their own contract for the farm's sale. As to Jo, there is no evidence in the record that Norman ever informed her that the sale was subject to a lease before entering the contract with Sandahl. Norman argues on appeal that Jo should be inferred to have had knowledge of the lease as of March 22, because of her conversations with Ken. However, even assuming that she were to be credited with such knowledge, her situation would still be like Ken's in that Sandahl and Norman entered into their contract for the sale of the farm within 14 days of March 22. Accordingly, the district court did not err in finding that the notice of Sandahl's offer presented to Jo and Ken was insufficient under the terms of the siblings' real estate agreement.

Sandahl's argument that Jo and Ken had a duty, upon receiving notice of his offer, to investigate "the exact terms of a potential purchase agreement" is similarly unavailing.[17]

---

[16] *Cast v. National Bank of Commerce T. & S. Assn.*, 185 Neb. 358, 176 N.W.2d 29 (1970) (White, C.J., dissenting), *withdrawn and superseded on rehearing on other grounds* 186 Neb. 385, 183 N.W.2d 485 (1971). See, also, *Strode v. City of Ashland*, 295 Neb. 44, 62-63, 886 N.W.2d 293, 307 (2016) ("'"'[t]he right to full and free use and enjoyment of one's property in a manner and for such purposes as the owner may choose, so long as it is not for the maintenance of a nuisance or injurious to others, is a privilege protected by law.'"'").

[17] Brief for appellant at 23.

In support of that argument, Sandahl cites opinions from other jurisdictions holding that once the offer is reasonably disclosed, the onus is on the person holding the right of first refusal to make a reasonable investigation regarding any terms that are unclear.[18] However, we find those cases to be distinguishable because none of them alleged a failure to disclose a new offer.

For example, in *Koch Industries, Inc. v. Sun Co., Inc.*,[19] the rightholder had a copy of the proposed purchase agreement, which consisted of 43 pages with 12 exhibits, but nonetheless claimed that its notice of the offer was insufficient because it lacked certain information. The U.S. Court of Appeals for the Fifth Circuit, applying Texas law, disagreed, finding that the rightholder actually had all but "one bit of information" that it claimed to lack and that it could have inquired about that detail.[20]

## Whether There Was Genuine Issue of Material Fact as to Knowledge of Lease

In the second category of assigned errors, Sandahl and Norman argue that the district court erred in granting summary judgment to Jo and Ken because there were genuine issues of material fact as to whether Jo and Ken knew that the farm's sale was subject to a lease. Sandahl, in particular, claims that the district court incorrectly stated that there was nothing in the record to indicate that Ken was aware of the lease prior to March 22, 2021, or that Jo was aware of the lease prior

---

[18] Cf., *Koch Industries, Inc. v. Sun Co., Inc.*, 918 F.2d 1203 (5th Cir. 1990); *Roeland v. Trucano*, 214 P.3d 343 (Alaska 2009); *Van Dam v. Spickler*, 968 A.2d 1040 (Me. 2009); *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779 (Minn. 2004); *Town of Sudbury v. Scott*, 439 Mass. 288, 787 N.E.2d 536 (2003); *John D. Stump v. Cunningham Mem. Park*, 187 W. Va. 438, 419 S.E.2d 699 (1992).

[19] *Koch Industries, Inc.*, *supra* note 18.

[20] *Id.*, 918 F.2d at 1213.

to the sale. Instead, Sandahl asserts, there was evidence that Jo and Ken knew that Norman had stopped farming and leased the farm to Sandahl. Jo and Ken take the opposite view.

[6-8] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[21] Not all issues of fact preclude summary judgment, but only those that are material.[22] In the summary judgment context, a fact is material only if it would affect the outcome of the case.[23]

For example, in *Strode v. City of Ashland*,[24] we affirmed summary judgment in favor of the defendants on inverse condemnation and takings claims arising from zoning regulations and load limits on a bridge. The plaintiffs argued that summary judgment was inappropriate because there were genuine issues of material fact as to whether the county was authorized to enforce the zoning regulations and whether the city or county had authority over the bridge.[25] We disagreed, finding that the disputed facts did not affect the outcome of the case, because the challenged actions did not amount to a taking of property.[26] We took a similar approach in *Amanda C. v. Case*,[27] finding that the allegedly disputed facts regarding whether the plaintiff would have reconciled with her natural father if the defendant had not encouraged him to relinquish his parental rights would not have affected the outcome because

---

[21] See *North Star Mut. Ins. Co. v. Miller*, 311 Neb. 941, 977 N.W.2d 195 (2022).

[22] *State Farm Fire & Cas. Co. v. Dantzler*, 289 Neb. 1, 852 N.W.2d 918 (2014).

[23] *Jacob, supra* note 2.

[24] *Strode, supra* note 16.

[25] See *id.*

[26] See *id.*

[27] *Amanda C. v. Case*, 275 Neb. 757, 749 N.W.2d 429 (2008).

the substance of the plaintiff's claim was that relinquishment, per se, harmed her.

Here, as in *Strode* and *Amanda C.*, Sandahl and Norman allege that there are disputed facts. However, also as in *Strode* and *Amanda C.*, those facts are not material. Sandahl's and Norman's arguments apparently concern Jo's and Ken's knowledge of whether the farm was leased, and not whether the sale of the farm was subject to a lease. Moreover, Jo's and Ken's alleged knowledge of the lease did not affect the outcome of the case, because the district court properly found that Jo and Ken did not receive sufficient notice of the offer under the siblings' real estate agreement.

## Court Order Regarding Jo and Ken's Exercise of Right of First Refusal

In the third and final category of assigned errors, Sandahl and Norman argue that the district court improperly rewrote the siblings' real estate agreement when it provided for Jo and Ken to exercise their right of first refusal after the contract for the farm's sale was voided. They observe that the siblings' agreement gave Jo and Ken 14 days to provide written notice, while the court gave Jo and Ken 16 days. Sandahl and Norman similarly observe that the siblings' agreement required that written notice be sent by certified mail, while the court did not. Sandahl and Norman assert that by altering the terms of the siblings' agreement in these ways, the district court improperly failed to strictly construe the option and extended it beyond its express provisions, contrary to our decision in *State Securities Co. v. Daringer*[28] and related cases. Relatedly, they assert that the district court improperly failed to require the holders of the right of first refusal to conform with the specified manner of acceptance, contrary to our decision in *Arnold v. Walz*.[29]

---

[28] *State Securities Co. v. Daringer*, 206 Neb. 427, 293 N.W.2d 102 (1980).

[29] *Arnold v. Walz*, 306 Neb. 179, 944 N.W.2d 747 (2020).

Jo and Ken, in turn, primarily argue that the district court's order was within its equitable powers in an action seeking specific performance. They cite *Strunk v. Chromy-Strunk*[30] for the proposition that courts of equity are not always restricted to the same rules as courts of laws. Jo similarly cites *City of Beatrice v. Goodenkauf*[31] and *State on behalf of Lockwood v. Laue*[32] for the proposition that an action in equity vests a trial court with broad powers authorizing any judgment under the pleadings.

[9] We need not resolve the various issues raised here. As we have stated, error without prejudice provides no ground for relief on appeal.[33] For example, in *Lamar Co. v. Omaha Zoning Bd. of Appeals*,[34] we concluded that the district court erred in allowing two businesses to intervene on appeal of the agency's decision. Nonetheless, we found that no prejudice resulted, because the intervenors offered no evidence at the court hearing and their argument was essentially the same as the agency's.[35] Similarly, in *In re Interest of D.L.S.*,[36] we concluded that the district court improperly allowed hearsay evidence. But we found that no prejudice resulted because there was other evidence that the child suffered a skull fracture and that the mother had been an inadequate parent.[37]

Even assuming, without deciding, that the district court should have required Jo and Ken to conform to the requirements of the siblings' real estate agreement when providing

---

[30] *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

[31] *City of Beatrice v. Goodenkauf*, 219 Neb. 756, 366 N.W.2d 411 (1985).

[32] *State on behalf of Lockwood v. Laue*, 24 Neb. App. 909, 900 N.W.2d 582 (2017).

[33] *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

[34] *Lamar Co. v. Omaha Zoning Bd. of Appeals*, 271 Neb. 473, 713 N.W.2d 406 (2006).

[35] *Id*.

[36] *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988).

[37] *Id*.

notice of their intent to exercise their right of first refusal after the contract for the farm's sale was voided, Sandahl and Norman did not suffer any prejudice as a result. The record shows that Norman received notice from Jo and Ken no later than March 2, 2022. As such, the fact that the district court effectively gave Jo and Ken 16 days to provide notice, while the siblings' real estate agreement gave them 14 days, is immaterial.

The same is true of the different provisions for sending and receiving notice in the siblings' agreement and the court's order. The siblings' agreement required written notice by certified mail, while the court order did not. However, the record indicates that Jo and Ken exercised their right of first refusal by tendering to Norman an executed purchase agreement at the court hearing on March 2, 2022. As such, it is immaterial that Norman did not receive Jo's and Ken's notices by certified mail.

## CONCLUSION

Sandahl's and Norman's arguments that the district court erred in voiding the contract to sell the farm and allowing Jo and Ken to exercise their right of first refusal to purchase it are without merit. Accordingly, we affirm the decision of the district court.

AFFIRMED.