IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KRAMER V. KRAMER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOSHUA D. KRAMER, APPELLANT,

V.

SHAUNA K. KRAMER, NOW KNOWN AS SHAUNA K. WHITEHILL, APPELLEE.

Filed January 9, 2024.    No. A-23-162.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Andrea Finegan McChesney, of M | F Law Omaha, for appellant.

Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## INTRODUCTION

Joshua D. Kramer appeals from an order of the district court for Lancaster County modifying the decree dissolving his marriage to Shauna K. Kramer, now known as Shauna K. Whitehill. During the course of the modification proceedings, the parties mediated a settlement agreement, and Shauna filed a motion to enforce that agreement. The court determined that the parties had reached an enforceable agreement, and after further proceedings on the issue of child support, modified the decree. On appeal, Joshua assigns error to the court's determination that the parties had reached an enforceable agreement and in determining the amount of reimbursement owed to Shauna for childcare expenses. Finding no error, we affirm.

## STATEMENT OF FACTS

Joshua and Shauna were married in 2009; they have one child born in 2010. The district court entered a decree dissolving their marriage in March 2014. Custody of the parties' child was

awarded to Shauna, subject to Joshua's parenting time as set forth in the attached parenting plan. Joshua was ordered to pay child support of $430 per month. Pursuant to the financial plan attached to the decree, Joshua was ordered to reimburse Shauna for half of all work-related childcare expenses she incurred for the parties' child. Shauna was to provide Joshua with receipts from the childcare provider on the first and fifteenth of each month, and he was to make direct payments to her within 14 days of obtaining physical possession of the receipts. The financial plan provided that the custodial parent was responsible for 100-percent of any extracurricular activity, education, or any other day-to-day expenses related to the care of the child.

In 2020, Joshua filed a complaint to modify the decree, alleging a material change in circumstances since entry of the decree, seeking joint legal and joint physical custody of the parties' child, and asking the district court to modify child support and parenting time accordingly.

In Shauna's operative answer and counterclaim, she sought a modification of child support based on changes in the Nebraska Child Support Guidelines and an increase in Joshua's income.

In August 2021, the parties and their attorneys attended mediation with a third-party mediator. On September 8, the mediator sent a letter to the parties' attorneys, stating that the previous week during mediation, they were able to "secure an agreement with respect to parenting issues." Specifically, the mediator stated that "[his] notes would indicate that the parties agreed" that Shauna would have physical custody, that the parties would share joint legal custody, but that Shauna would "have final say." The mediator also stated that the parties had agreed to "continue a 10/4 schedule" and that Joshua would "also have the alternate Wednesday from 4:00 to 7:00 p.m." Additionally, the mediator specified the parties' agreement to certain changes to holiday and summer parenting time. The mediator stated that there "was a great deal of discussion with respect to the minor child changing schools" and that the parties had agreed to certain things but not to all aspects of that particular issue. The mediator also stated that the parties had not reached a final agreement with respect to child support. Finally, he observed that [b]ased on the information provided, it appears that [Joshua] owes back child-care in excess of $8,000.00," and he expressed his understanding that a subsequent agreement would be reached between the parties as to the exact amount of childcare reimbursement owed and the method of repayment.

On October 21, 2021, Joshua's attorney sent a letter to Shauna's attorney, alleging that Shauna was withholding Joshua's every other Wednesday evening parenting time "until she receives her $8,000." Joshua's attorney stated, "This is contrary to [the mediator's] September 8, 2021, letter setting forth what the parties agreed upon in mediation." She asked Shauna's attorney to inform Shauna to "immediately resume [Joshua's] every other Wednesday parenting time," stating that Joshua would otherwise "have no alternative but to file a contempt action and ask for fees." She also asked Shauna's attorney to inform Shauna that "she cannot make up her own rules during this process."

On November 17, Joshua's attorney sent a letter to the mediator, outlining Joshua's disagreement with certain provisions of the mediator's September letter. Specifically, Joshua's attorney stated that Joshua agreed to joint legal custody, having parenting time every other Wednesday, and with the summer parenting time set forth in the mediator's letter. However, his attorney stated that Joshua did not agree to Shauna having sole physical custody, with Shauna "having the final say" with respect to legal custody matters, with the Christmas holiday schedule, or with Shauna "having final say as it pertains to the child's school." Finally, Joshua's attorney

stated that the parties did not reach an agreement as to child support and that the issue of childcare was "separate from custody and parenting time."

On November 18, 2021, Shauna filed a motion to enforce the mediated agreement. She alleged that the parties' mediated agreement was reduced to written form in the mediator's September 8 letter to the parties' attorneys. She alleged further that following mediation, she complied with the weekday parenting time set forth in the mediated agreement at Joshua's request, but that when she inquired about holiday parenting time changes pursuant to the agreement, Joshua stated he did not agree with those changes as well as other mediated terms. Shauna alleged that in reaching the mediated changes, there was an understanding and a meeting of the minds, and she asked the district court to enforce the language as agreed to in the mediated agreement.

On November 19, Shauna filed a motion relating to the childcare expenses provision of the financial plan attached to the divorce decree. She alleged that Joshua had paid "a small portion" of the childcare expenses pursuant to the decree and that the parties were in disagreement as to the amount he owed. She asked the district court to determine the rights and interests of the parties with respect to the childcare obligation and enter judgment accordingly.

A hearing on Shauna's motions was held before the district court on January 26, 2022. The court heard testimony from the parties as well as from a childcare provider, and it received exhibits, including affidavits from the parties' attorneys with attachments including copies of the letters referenced above, text messages between the parties, and documentation related to the childcare reimbursement issue.

With respect to the mediation attended by the parties, Shauna testified that she understood an agreement had been reached on "a number of issues;" her testimony as to the agreed upon terms was consistent with those reflected in the mediator's September 2021 letter. She testified, however, that she did not immediately allow Joshua to exercise the every other Wednesday evening parenting time because she was "confused" as to when the mediated agreement was to take effect. After seeing the October 2021 letter from Joshua's attorney to her attorney, she did allow Joshua to start the Wednesday parenting time because she felt that it "was part of the agreement." She agreed that Joshua had continued to exercise that parenting time up to the time of the hearing.

In November 2021, the parties began communicating about the upcoming holiday parenting time. Text messages received into evidence acknowledged that Shauna was to have the child Christmas Day, but that the parties disagreed about whether that day, which fell during Joshua's week, would have to be made up. The text messages also reflect the parties' disagreement as to whether they had in fact reached an agreed upon "plan" during mediation.

Joshua testified that his understanding of the terms agreed to in the mediation were reflected in his attorney's November letter to the mediator. He also testified that he thought that a parenting plan would be provided for review following mediation and that he "believed that nothing was in effect because nothing was agreed upon."

On the issue of childcare reimbursement, the record shows that the parties' child attended a particular childcare facility from September 2013 through August 2018. An employee of the facility testified that Shauna paid a total of $18,442.18 in childcare expenses from March 2014 (when the decree was entered) through 2018. According to Shauna, she "physically gave [Joshua] a copy of the childcare receipts" from the facility on the first and fifteenth of each month because "he said at the time he wasn't using email."

Joshua testified that Shauna did give him receipts for childcare expenses, but he did not believe that he "got every receipt." He denied that she provided receipts on the first and fifteenth of each month. Joshua testified that he was not aware of the full balance of the childcare expenses incurred by Shauna until after he filed the modification proceedings.

The parties agreed that Joshua had reimbursed Shauna $600 for childcare expenses. He was asked if he recalled "what other payments [he] made in cash to [Shauna]." In response, Joshua testified, "I cannot say exactly, 'cause I know I have given her . . . cash for that [the $600 in childcare expenses] and other things, also, pertaining to our son." When asked further about what cash payments he had made to Shauna "over the years," he recalled giving her "money for extra-curricular activity like sports" and that "almost every year," he had "given her money for Camp Kitaki." The only specific payment for extracurricular activities made by Joshua to Shauna that was documented at the hearing was his payment of $311 for the child to participate in a season of baseball. Shauna agreed that Joshua should receive credit against the delinquent childcare expenses for the $311 paid for this activity.

When Shauna was asked why she did not pursue legal action with respect to the delinquent childcare reimbursement sooner, Shauna testified that she could not afford to hire an attorney solely for that purpose but decided to file her motion in November 2021 because she had already hired an attorney for the modification proceedings.

On February 24, 2022, the district court entered an order enforcing the mediation agreement and determining the amount of childcare reimbursement owed by Joshua to Shauna. The court found that the parties reached an agreement through mediation on the issues of custody and parenting time, which agreement was memorialized in the mediator's letter and ratified by Joshua's insistence that he immediately be allowed his Wednesday evening parenting time. The court found that under the mediated agreement, Joshua gained joint legal custody, additional parenting time every other Wednesday, week on/week off parenting time during the summer months, and holiday parenting time on Thanksgiving Day and Christmas Eve. The court stated that it made "no sense" for Joshua to insist on the agreed to Wednesday evening parenting time if he "thought he was still pursuing joint physical custody." It also stated that it found Shauna's testimony more credible than Joshua's with respect to whether an agreement was reached. The court concluded that the parties had entered into a binding and enforceable settlement agreement at the mediation that resolved the issues of custody and parenting time raised by the modification complaint and that the mediator's letter, "which was not contested by either party until November, accurately reflects the terms of the parties' agreement." The court approved the agreement as fair, reasonable, not unconscionable, and in the best interests of the parties' child. The court granted Shauna's motion to enforce the mediated agreement, and it ordered the parties to follow the terms set forth in the mediator's September 8, 2021, letter.

After reviewing the evidence with respect to childcare expenses, the district court found that Shauna was entitled to reimbursement for Joshua's share of those expenses and that her right to reimbursement was not forfeited even if she failed to send requests and supporting documentation on a timely basis as there was no mention of such forfeiture in the decree. The court found that even though Joshua could not be held in contempt for failure to pay, equity still required him to pay the unreimbursed childcare expense. The court then granted Shauna's motion and entered judgment against Joshua for $8,310.09 in unreimbursed childcare expenses.

Finally, the district court granted Shauna's request for attorney fees and ordered Joshua to pay $1,295 toward Shauna's attorney fees and costs in enforcing the mediated agreement. In doing so, the court observed that Joshua "had no real evidence that an agreement had not been reached other than his self-serving testimony" and that his complaint for modification offered no allegations supporting a change in circumstances that would warrant a change in custody.

The district court's February 2022 order included direction to the parties' attorneys to schedule a final hearing to determine the remaining issue of child support so that a final order on modification could be entered. Following hearing on the child support modification issue, the court entered an amended order regarding modification on February 7, 2023. The court noted its February 2022 order, resolving all issues related to the pending modification action with the exception of child support, and further modified the decree to order that Joshua's child support obligation would increase to $450 effective November 1, 2022 (a downward deviation from the newly calculated amount of $487).

Subsequently, Joshua perfected his appeal from the district court's February 2023 modification order.

## ASSIGNMENTS OF ERROR

Joshua asserts that the district court erred in (1) finding that the parties reached an enforceable settlement agreement through mediation and (2) determining the amount of childcare reimbursement he owed to Shauna.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Parish v. Parish*, 314 Neb. 370, 991 N.W.2d 1 (2023). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Winkler v. Winkler*, 31 Neb. App. 162, 978 N.W.2d 346 (2022).

Whether a contract exists is a question of fact; the meaning of a contract is a question of law. *Ross, Schroeder v. Artz*, 23 Neb. App. 545, 875 N.W.2d 457 (2016).

The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. *Mackiewicz v. Mackiewicz*, 313 Neb. 281, 984 N.W.2d 253 (2023).

## ANALYSIS

*Enforceable Settlement Agreement.*

Joshua asserts that the district court erred in finding that the parties reached an enforceable settlement agreement through mediation. The court found that the parties entered into a binding and enforceable settlement agreement on August 31, 2021, that the agreement unconditionally resolved the material issues of custody and parenting time raised by the modification complaint,

and that the mediator's letter following modification accurately reflected the terms of the parties' agreement. The court approved the agreement as fair, reasonable, not unconscionable, and in the best interests of the parties' child.

A settlement agreement is subject to the general principles of contract law. *In re Estate of Wiggins*, 314 Neb. 565, 992 N.W.2d 429 (2023). To have a settlement agreement, there must be a definite offer and an unconditional acceptance. *Smith v. King*, 29 Neb. App. 152, 953 N.W.2d 258 (2020). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Slama v. Slama*, 313 Neb. 836, 987 N.W.2d 257 (2023).

A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Id.* The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. *Id.* A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract. *Id.*

On appeal, Joshua argues that the parties only reached a partial agreement through mediation. He points to his response to the mediator's letter as proof that the parties were not in agreement on all essential terms. He also argues that the mediator had no authority to act on his behalf and that the letter only reflected the mediator's understanding of what happened during mediation, not what the parties actually did or did not agree to. He points to Shauna's initial refusal to comply with the Wednesday evening parenting time provision as further evidence of lack of an enforceable agreement. In contrast, Shauna argues that the mediator's letter accurately reflects what the parties agreed to during mediation, and points to the parties' compliance with the Wednesday evening parenting time provision, once she clarified when that parenting time was to begin, as proof that the parties reached an agreement. She also notes the district court's finding that her testimony as to whether an agreement was reached was more credible than Joshua's.

In his modification complaint, Joshua sought joint legal and joint physical custody, the right of first refusal for parenting time, and a recalculation of the parties' child support obligations. The mediator's letter memorialized the parties' agreement that Shauna would have physical custody and that the parties would share joint legal custody with Shauna having "final say." And, as to parenting time, the letter memorialized the parties' agreement to continue a "10/4" schedule with the addition of Joshua's parenting time on alternating Wednesday evenings, as well as their agreement as to certain changes in holiday and summer parenting time. The letter indicated that the parties did not agree with respect to all issues concerning the child's school, that no agreement as to child support was reached due to a lack of information on each party's total income, and that the parties intended to reach a later agreement with respect to the amount of unreimbursed childcare expenses owed by Joshua and the method for repayment.

The district court found that the parties had reached an agreement as to the material issues of custody and parenting time raised in the modification complaint. The court found that Joshua's insistence to his right to the Wednesday evening parenting time did not make sense if he thought an agreement had not been reached and that he was still pursuing joint custody. Essentially, the

evidence was conflicting as to whether the parties reached an agreement during mediation as to the modification of custody and parenting time and whether the mediator's letter accurately reflected the terms to which the parties agreed. The court clearly accepted Shauna's version of the facts over Joshua's and we give weight to its determination in that regard. See *Winkler v. Winkler*, 31 Neb. App. 162, 978 N.W.2d 346 (2022) (where credible evidence is in conflict on material issue of fact, appellate court considers, and may give weight to, fact that trial judge heard and observed witnesses and accepted one version of facts rather than another). The court did not err in finding that the parties reached an enforceable settlement agreement. This assignment of error fails.

*Reimbursement for Childcare Expenses.*

Joshua asserts that the district court erred in determining the amount of childcare reimbursement he owed to Shauna. The court ordered Joshua to pay $8,310.09 in unreimbursed childcare expenses (which was half of the $18,442.18 paid by Shauna, less the $600 in childcare expenses and the $311 for the child to play baseball paid by Joshua).

A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023). Pursuant to the financial plan made part of the parties' 2014 divorce decree, Joshua was ordered to pay half of all work-related childcare expenses incurred by Shauna, who was to provide him with receipts from the childcare provider on the first and fifteenth of every month. Joshua was to reimburse Shauna within 14 days of obtaining physical possession of the receipts. And, Shauna, as custodial parent, was responsible for the cost of extracurricular activities.

Joshua does not dispute that the parties' child attended childcare between March 2014 and 2018 or that Shauna paid a total of $18,442.18 in childcare expenses. Joshua relies, as he did at the hearing on Shauna's November 2021 motion to determine rights, on the affirmative defenses of equitable estoppel, laches, and unclean hands, to argue that Shauna should have made her claim for payment of the unreimbursed childcare expenses earlier, in any of the prior years following the divorce, rather than waiting until after Joshua filed the complaint for modification. Shauna asserts that Joshua failed to plead, and thus has waived, these affirmative defenses. See, *Melia v. Hansen*, 31 Neb. App. 517, 985 N.W.2d 418 (2023) (laches and doctrine of unclean hands are affirmative defenses); *Bleich v. Bleich*, 312 Neb. 962, 981 N.W.2d 801 (2022) (equitable estoppel is affirmative defense); *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017) (party must specifically plead affirmative defense for court to consider it). The record on appeal does not contain any pleadings filed by Joshua in response to Shauna's motion to determine rights and interests with respect to the parties' childcare expense obligations under the decree.

In granting Shauna's motion, the district court found that because the decree did not mention forfeiture, Shauna's right to reimbursement of Joshua's share of the childcare expenses was not forfeited even if she failed to send requests and supporting documentation on a timely basis. See *Hendrix v. Sivick*, 19 Neb. App. 140, 803 N.W.2d 525 (2011) (finding no error in trial court ordering ex-husband to reimburse ex-wife for his proportionate share of childcare and uninsured medical expenses, although she did not timely submit requests for reimbursement,

where decree did not specify such forfeiture with respect to childcare expenses and uninsured medical expenses provision did not require documentation within particular timeframe).

The district court did not err in ordering Joshua to pay Shauna $8,310.09 in unreimbursed childcare expenses. The evidence shows that she incurred a total $18,442.18 in childcare expenses, that Joshua paid $600 toward his half of those expenses, and that, although not required by the decree, the parties agreed that Joshua should also be given credit for the $311 he paid for the child's sports activity. The evidence was conflicting as to Shauna's provision to Joshua of receipts for the childcare expenses. Regardless, there is nothing in the decree that relieves Joshua of his obligation to pay these expenses based on Shauna's failure to provide receipts in the manner specified. This assignment of error fails.

## CONCLUSION

The district court did not err in finding that the parties reached an enforceable settlement agreement through mediation or in determining the amount of childcare reimbursement Joshua owed to Shauna. Accordingly, we affirm the court's order of modification.

AFFIRMED.